IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:11-CV-615-DCK

| | |
|---|---|
| KIMBERLY F. SHAREEF, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **ORDER** |
| | ) |
| PATRICK R. DONAHOE, | ) |
| Postmaster General, U.S. Postal Service, | ) |
| | ) |
| Defendant. | ) |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For The Court To Issue Monetary Sanctions Against The Defendant For Discovery Misconduct, Discovery Abuse, Forgery, Fraud And Spoilage" (Document No. 52) and "Plaintiff's Request For Motion To Compel The Defendant To Produce Documents" (Document No. 63). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are ripe for disposition. Having carefully considered the motions, the record, and applicable authority, the undersigned will deny Plaintiff's motions.

**I. BACKGROUND**

Kimberly F. Shareef ("Plaintiff" or "Shareef"), appearing *pro se*, filed her "Complaint" (Document No. 1) on December 5, 2011. On June 6, 2012, the parties filed a "Joint Stipulation Of Consent To Exercise Jurisdiction By A United States Magistrate Judge" (Document No. 25) in accordance with 28 U.S.C. 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure.

On November 15, 2012, the undersigned held a motions hearing, after which the pending claims against Patrick R. Donahoe, Postmaster General, U.S. Postal Service ("Defendant" or "Donahoe") were somewhat narrowed. Following that hearing, the Court granted Defendant's

"Motion For Pretrial Hearing On Federal Defendant's 12(b)(1) Defense Of Lack Of Subject Matter Jurisdiction" (Document No. 20).  See (Document No. 40).  The undersigned specifically opined:

> For the reasons stated at the hearing, as well as those stated in Defendant's presentation at the hearing and in its written motion, the undersigned finds good cause to grant the pending motion.  As a result, to the extent the Complaint (Document No. 1) attempts to assert claims pursuant to 42 U.S.C. §1985 and/or tort claims such as slander, false accusations, false reports and/or misrepresentations, those claims are dismissed.  However, as discussed at the hearing, Plaintiff's claims pursuant to Title VII, including retaliation, and discrimination on the basis of race, gender, religion, and color, and/or claims of age discrimination, will all survive until otherwise ordered by this Court.

(Document No. 40, p.1); see also (Document No. 50, p.3).

Currently pending before the Court are "Plaintiff's Motion For The Court To Issue Monetary Sanctions Against The Defendant For Discovery Misconduct, Discovery Abuse, Forgery, Fraud And Spoilage" (Document No. 52);  "Federal Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment" (Document No. 62);  and "Plaintiff's Request For Motion To Compel The Defendant To Produce Documents" (Document No. 63).  The undersigned has allowed Plaintiff multiple extensions of time to file a response to Defendant's "…Motion To Dismiss Or, In The Alternative, For Summary Judgment" (Document No. 62), and it is not yet ripe for disposition.  See (Document Nos. 71, 76 and 79).  However, Plaintiff's motions for sanctions and/or to compel (Document Nos. 52 and 63) have been fully briefed and are therefore ripe for review.[1]

## II. STANDARD OF REVIEW

Rule 26 of the Federal Rules of Civil Procedure provides that:

---

[1] Plaintiff filed a "Notice Of Correction For Document No. 66" (Document No. 80) on August 20, 2013, without seeking leave to file an amendment or supplement, and without describing what correction(s) are included in the new document.

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). The rules of discovery are to be accorded broad and liberal construction. See Herbert v. Lando, 441 U.S. 153, 177 (1979); and Hickman v. Taylor, 329 U.S. 495, 507 (1947). However, a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense." Fed.R.Civ.P. 26(c)(1).

Whether to grant or deny a motion to compel is generally left within a district court's broad discretion. See, Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929 (4th Cir. 1995) (denial of motions to compel reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting District Court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).

> If the motion is granted – or if the disclosure or requested discovery is provided after the motion was filed – the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

Fed.R.Civ.P. 37(a)(5)(A). Likewise, if a motion is denied, the Court may award reasonable expenses, including attorney's fees, to the party opposing the motion. Fed.R.Civ.P. 37(a)(5)(B). In addition, if the Court determines that a "party or a party's officer," has "fail[ed] to obey an

order to provide or permit discovery," the Court *may* order sanctions pursuant to Fed.R.Civ.P. 37(b)(2).

### III. DISCUSSION

**A. Motion For Sanctions**

Plaintiff alleges several acts of misconduct by Defendant, including: (1) alteration, forgery, and/or "spoilage" of documents during the discovery process; (2) destruction of an email allegedly generated and sent by Rodney DeFlumeri ("DeFlumeri") on May 28, 2010; and (3) Defendant's failure to provide Plaintiff a copy of a transcript of an audio recording made by Plaintiff prior to John Cavanaugh's ("Cavanaugh") deposition. (Document No. 52). Plaintiff also alleges that counsel for Defendant "met privately with the witnesses for Plaintiff, without the Plaintiff's knowledge." (Document No. 52, p.6).

**1. Plaintiff's Interrogatories**

First, Plaintiff contends that "Defendant altered/forged portions of the Plaintiff's Interrogatories that were submitted to Defendant for a response." (Document No. 52, p.1). Specifically, Plaintiff asserts that Defendant altered Plaintiff's Interrogatories No. 14 and 15 on October 23, 2012. (Document No. 52, p.2). Plaintiff notes that she "was not made aware of the forgery/alterations, until May 28, 2013." Id.

As originally served by Plaintiff on or about September 12, 2012, Interrogatories No. 14 and 15 requested the following:

> 14.
> Please explain, despite being the selecting official's first choice, why Plaintiff's job offer as a TE carrier in Lancaster, SC was rescinded.

> 15.
> Please identify the individual responsible for deciding that
> Plaintiff's job would offer, as a TE carrier in Lancaster, SC would
> be rescinded.

(Document No. 52, p.11). Defendant's responses to these interrogatories, served on or about October 23, 2012, re-phrased these interrogatories as follows:

> INTERROGATORY #14. Please explain why, despite being the selecting official's first choice, Plaintiff was not offered a position as a TE carrier in Lancaster, SC.
>
> INTERROGATORY #15. Please identify the individual responsible for deciding Plaintiff would not be offered the position as a TE carrier in Lancaster, SC.

(Document No. 52-1, p.2).

Regarding this allegation, Defendant contends that the alleged alteration/forgery was simply a transcription error. (Document No. 59, pp.1-2). Defendant further states that "after the transcription error was called to Federal Defendant's attention, Federal Defendant provided a Supplemental Response correcting the transcription error and leaving the substance of the response intact (although additional objections were stated in the Supplemental Response)." (Document No. 59, p.2). "Federal Defendant's First Supplemental Response To Plaintiff's Request For [SIC] Interrogatories" (Document No. 59-1), served on Plaintiff on or about June 12, 2013, states in part:

> It should be noted that Plaintiff's original Interrogatories were served only in hard copy, necessitating their retyping in order to create Federal Defendant's Response. . . . It should also be noted that the text of Plaintiff's original Interrogatory #14 includes awkward syntax. It should further be noted that the text of Plaintiff's original Interrogatory #15 contains either a typographical error or syntax that renders the Interrogatory unintelligible. In this Supplemental Response, the correct, original text of each of Plaintiff's Interrogatories (including the original typographical error or awkward syntax) appears preceding the responses being provided by Federal Defendant.

(Document No. 59-1, pp.1-2).

The undersigned observes that the responses to Interrogatory No. 14, in the original (Document No. 52-1), and in the Supplemental (Document No. 59-1), are identical. In pertinent part the Supplemental Response to Interrogatory 14 provides:

> Object on two grounds. First, the Interrogatory is misleading in that it suggests Plaintiff was eligible to be hired, while, in truth and in fact, she was not eligible. Second, Postal appointees are appointed, not "hired" for positions. At the time Ms. Shareef applied to be a Transitional Employee – City Carrier at the Lancaster, South Carolina, Post Office, the Postal Service had an appointment and re-appointment process in place that included participation by the Postmaster and that also involved preparation of a hiring list and further approvals by other components of the Postal Service. In an EEO Investigative Affidavit, Ms. Robbins pointed out that Ms. Shareef was never officially offered the position and that, in connection with selection for the position, an applicant must still meet qualifications through Personnel or Human Resources of the pertinent Postal District. Prior to Ms. Shareef's application going through Personnel or Human Resources for final approval, Ms. Robbins said that "based on the hiring list," Ms. Shareef was her "First selection," 1st Selection," "First pick," or "1st Selection pick." Ms. Robbins further explained that "Personnel advised my selection was not eligible" and that because Ms. Shareef "[n]ot eligible when TE position ended in Wilmington [she was] not offered appointment" as a TE city carrier in Lancaster. . . .

(Document No. 59-1, p.2). Defendant's responses to Interrogatory No. 15 are nearly identical, the only difference being the objection included in the Supplemental Response. Id. The Supplemental Response contends that "David Mills, Human Resources Manager, Mid-Carolinas District, made the decision that the Plaintiff would not be re-appointed in the Mid-Carolinas District that includes the Lancaster, South Carolina, Post Office." (Document No. 59-1, p.3).

"Plaintiff's Reply…" states that Defendant "methodically and deliberately altered" Plaintiff's interrogatories "in an effort to deceive the court." (Document No. 66, p.2). Plaintiff

6

suggests that the Defendant's claim of a typographical error is implausible "because attorneys for the Defendant do not manually re-type documents . . . [they] use a sophisticated scanning process . . . [and therefore] there is no need for the attorney's paralegal to re-type any of the opposing party's documents.

The undersigned respectfully disagrees with Plaintiff's assertions. First of all, while the undersigned cannot speak to the current methods of word processing in the U.S. Attorney's Office, the undersigned knows with certainty that staff in this courthouse frequently must re-type portions of discovery documents in dispute, without the aid of a sophisticated scanning process. In fact, the reproductions of the interrogatories and responses above have been typed by the undersigned's staff, hopefully without error.

More importantly, the undersigned is not persuaded that Defendant's counsel deliberately altered any of Plaintiff's interrogatories, or that Plaintiff suffered any prejudice here. It appears that Plaintiff's responses remained consistent regardless of the precise phrasing of the interrogatory. Moreover, the record suggests that as soon as Defendant became aware of the problem, an appropriate and corrected supplement was promptly served on Plaintiff. (Document No. 59-1). The rule against filing discovery materials with the Court also undercuts Plaintiff's argument that Defendant altered part of two of her interrogatories "in an effort to deceive the court." "Discovery materials are not to be filed unless used to support or oppose a motion," as such, the Court was unaware of the alleged alteration until the instant motion was filed. (Document No. 24, p.4).

Finally, the undersigned notes that Plaintiff waited over seven (7) months to raise this issue with the Court, and that instead of seeking to compel a complete response as required under Fed.R.Civ.P. 37 (a) (3)-(4), she moved directly for sanctions.

In short, the undersigned finds Plaintiff's claim of fraud, forgery, spoliation or other misconduct related to Defendant inaccurately reproducing the precise language of two interrogatories to be without merit.

**2. DeFlumeri Document**

Next, Plaintiff contends that Defendant committed "spoilage" by destroying emails "that would have been used as evidence in this litigation." (Document No. 52, p.2). Specifically, Plaintiff alleges that "[t]here was an email forwarded to the managers of the United States Postal Service (USPS) making false claims that the Plaintiff was fired, with a do-not-rehire, effective May 28, 2010, by USPS Postmaster Rodney Deflumeri." Id. Plaintiff goes on to describe what she considers to be "evidence that the May 28, 2010 email exist[s]." (Document No. 52, pp.3-5). Plaintiff concludes that the email was destroyed for fraudulent purposes after the Plaintiff filed her Complaint. (Document No. 52, p.50).

Defendant denies that there is a May 28, 2010 email from Rodney DeFlumeri stating that Plaintiff had been "fired." (Document No. 59, p.2) (citing Document No. 59-2, p.3). "Federal Defendant's Response To Plaintiff's Request For Production Of Documents" (Document No. 59-2) specifically addressed this issue as follows:

> REQUEST #5. Please produce any and all documentation, including but not limited to the May 28, 2010 email by Rodney DeFlumeri, indicating that Plaintiff would be/had been fired as a TE carrier in Wilmington, NC.
>
> RESPONSE: Object on the grounds that the Plaintiff was not "fired", but, in truth and in fact, the Plaintiff was not renewed (or re-appointed as a TE carrier in the Wilmington, North Carolina, Post Office. Without waiving the objection, there are no known documents authored by Rodney DeFlumeri or other managers stating that Plaintiff either would be or had been "fired" as a TE carrier in Wilmington, North Carolina. There are numerous documents showing Plaintiff's safety problems and other poor

8

> performance that resulted in her not being re-appointed in the Mid-Carolinas District. See Response to Request #4.

(Document No. 59-2, p.3).

Defendant acknowledges that according to an EEO Affidavit, there was an email sent from DeFlumeri to Chuck Fiske ("Fiske"), with a copy to Jeannette O. Runyan, Human Resources Generalist ("Runyan"). (Document No. 59, p.2) (citing Document No. 59-3, p.2). The affidavit of Runyan (Document No. 59-3) appears to be the same evidence cited by Plaintiff in the pending motion. See (Document No. 52, p.3). In most pertinent part regarding the alleged DeFlumeri email, the Runyan affidavit states:

> During May 2010 I was involved in posting a vacant Transitional Employee (TE) City Carrier position for the Lancaster SC Post Office. The posting opened 5/5/10 and closed 5/14/10 in the eCareer system. It just so happened on 5/14/10, I was copied on an email from Rodney DeFlumeri, Postmaster Wilmington, NC, to Chuck Fiske, Acting Manager Labor Relations, who was inquiring about a standard letter given to TE's who were not being rehired after their break due to poor performance issues and a motor vehicle accident. Postmaster DeFlumeri did not mention the TE's name in his email. I had no idea the subject TE was the Complainant. . . .

(Document No. 59-3, p.2).

After careful review of the parties' briefs, the undersigned is not persuaded that Defendant has withheld, or destroyed, a May 28, 2010 email from DeFlumeri stating that Plaintiff had been "fired." Rather, it appears that there is consensus that there was an email on or about May 14, 2010, written by DeFlumeri, that may have discussed Plaintiff not being re-hired or re-appointed. Furthermore, the record indicates that by June 1, 2010, Plaintiff had received and signed a document titled "TE Termination End Of Appointment" stating that her employment as a Transitional Employee began on or about June 16, 2009, and would end on June 10, 2010. (Document No. 59-10).

Based on the foregoing, it does not appear that Defendant has engaged in any sanctionable misconduct related to Plaintiff's specific document request at issue. However, it is unclear what documents Plaintiff has received that were generated by DeFlumeri in May 2010. The undersigned finds that a reasonable interpretation of Plaintiff's Document Request No. 5 would lead to the production of any and all documents written by DeFlumeri in May 2010, discussing Plaintiff's employment status, including the email sent from DeFlumeri to Fiske, on or about May 14, 2010. If Defendant withheld that document, and/or similar documents, such action has likely been to the detriment of an efficient resolution of this case. As such, the Court will *sua sponte* direct Defendant to immediately provide such documents to Plaintiff.

### 3. Deposition Misconduct

Plaintiff's final argument in support of her motion for sanctions first asserts that prior to Defendant's October 11, 2012 deposition of John Cavanaugh, Defendant improperly allowed Cavanaugh "to view transcribed audio recordings made by the Plaintiff, **before** the start of deposition," and that Defendant failed to provide her a copy of the transcript before the deposition. (Document No. 52, pp.5-6). Plaintiff concludes, with little explanation, that "allowing the witness for the Defendant to view the transcript, before deposition and off the record, is a violation of FRCP 30." (Document No. 52, p.7).

Plaintiff acknowledges that she made audio recordings during her employment with the postal service, and that those "audio recordings were transcribed and are being used as evidence to support her claims of racial discrimination." (Document No. 52, p.5). Plaintiff's motion further acknowledges that within a week of the disputed deposition, Defendant's counsel sent her a copy of the transcript in question via email. (Document No. 52, p.6).

Regrettably, the "Federal Defendant's Response In Opposition…" (Document No. 59) fails to address Plaintiff's allegation of deposition misconduct pursuant to Rule 30. Instead, Defendant's "…Response…" concludes with a statement that "[t]he rest of Plaintiff's Motion is even more groundless than the foregoing matters and merits no further response here." Defendant's conclusory remark is not helpful. Id. Defendant is respectfully advised that in the future, the parties and the Court will be better served if Defendant addresses each argument in a motion, regardless of whether such argument(s) are deemed to be "groundless" or not. Apparently, Defendant's counsel was at the disputed deposition on October 11, 2012, and therefore, is in the unique position of being able to: offer his version of events; accept or deny responsibility for any wrongdoing; and discuss whether or not Rule 30 is applicable here. Nevertheless, the Court will decline to construe Defendant's silence on this issue. See (Document No. 66, p.4).

Although Plaintiff cites to Rule 30 generally to support her allegation of misconduct, she fails to specify which section of that rule she contends is applicable here. To the extent Defendant used the aforementioned transcript *during* Cavanaugh's deposition, it appears that Fed.R.Civ.P. 30(f)(2) would allow Plaintiff an opportunity to review and/or copy such a document. As noted above, Defendant *did* provide Plaintiff a copy of the transcript on October 17, 2012. (Document No. 52, p.6). However, the crux of Plaintiff's allegation seems to be that it was allegedly misconduct for Defendant to allow Cavanaugh to view a transcript of Plaintiff's audio recordings *before* the deposition. Plaintiff does not explain which part of Rule 30 was violated by Defendant allowing one of his witnesses, Cavanaugh, to view evidence in this case prior to his deposition. (Document No. 52).

Accepting Plaintiff's factual allegations as true, the undersigned is still not persuaded that Plaintiff suffered any prejudice. Presumably, since Plaintiff made the audio recordings, she had every opportunity to review those recordings, and/or have them transcribed. It is unclear to the undersigned that Defendant had any obligation to provide Plaintiff copies of her own evidence, before or after the deposition.

Moreover, Plaintiff does not allege that she made any objection to Defendant's conduct at the time of the deposition. (Document No. 52). Rule 30 requires that

> An objection at the time of the examination--whether to evidence, to a party's conduct, to the officer's qualifications, to the manner of taking the deposition, or to any other aspect of the deposition-- must be noted on the record, but the examination still proceeds; the testimony is taken subject to any objection. An objection must be stated concisely in a nonargumentative and nonsuggestive manner.

Fed.R.Civ.P. 30(c)(2). Even recognizing that this case involves a *pro se* plaintiff, it is difficult to comprehend the delay between the October 11, 2012 Cavanaugh deposition, and the May 31, 2013 motion seeking sanctions for misconduct at that deposition. There is no indication that Plaintiff ever expressed an objection prior to her motion for sanctions more than seven (7) months later.

Plaintiff also asserts that Defendant's counsel "met privately with the witnesses for the Plaintiff, without the Plaintiff's knowledge," and that these meetings were "meant to intimidate the Plaintiff's witnesses." (Document No. 52, p.6). Plaintiff does not provide any other facts to describe or support her allegation, nor does she cite any legal authority. Without more, the undersigned is unable to conclude that there was any misconduct by Defendant's counsel.

As noted by Defendant, Plaintiff has essentially short-circuited the usual procedure by moving for sanctions without properly objecting and/or first moving to compel. See (Document

No. 59, p.1). Based on the foregoing, the undersigned finds that Plaintiff's allegations of misconduct at the Cavanaugh deposition on October 11, 2012, are untimely and without merit. "Plaintiff's Motion For The Court To Issue Monetary Sanctions Against The Defendant For Discovery Misconduct, Discovery Abuse, Forgery, Fraud And Spoilage" (Document No. 52) will be denied.

**B.  Motion To Compel**

"Plaintiff's Request For Motion To Compel The Defendant To Produce Documents" (Document No. 63) was filed on June 20, 2013, more than a month after the close of discovery, and one day after the dispositive motions deadline.  See (Document Nos. 43 and 53).  The motion to compel essentially asserts many of the same claims considered above regarding an alleged "May 28, 2010 email generated by Rodney DeFlumeri."  (Document No. 63, p.8). Plaintiff again insists that the evidence supports the existence of such an email and that Defendant should be compelled to produce it.

The undersigned is not convinced that such an email exists.  As discussed in Plaintiff's instant motion, there may have been multiple "incidents" or documents that have resulted in confusion about this issue. (Document No. 63, pp.4-5).  Moreover, Plaintiff has thus far failed to persuasively explain the significance of an alleged email from DeFlumeri on May 28, 2010, stating that she was "fired," rather than not hired or not re-appointed.  As noted above, the record clearly shows that by June 1, 2010, Plaintiff had received and signed a document titled "TE Termination End Of Appointment," thus acknowledging that her employment as a Transitional Employee would end on June 10, 2010.  (Document No. 59-10);  see also (Document No. 63, p.5).

Nevertheless, based on the apparent confusion about DeFlumeri's email(s) in May 2010, the undersigned has directed above, and will *sua sponte* order, that Defendant immediately provide Plaintiff all copies of DeFlumeri's emails from May 2010 that discuss Plaintiff's employment. As such, the Court will deny Plaintiff's motion to compel as moot.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Motion For The Court To Issue Monetary Sanctions Against The Defendant For Discovery Misconduct, Discovery Abuse, Forgery, Fraud And Spoilage" (Document No. 52) is **DENIED**.

**IT IS FURTHER ORDERED** *sua sponte*, that Defendant immediately provide to Plaintiff all documents drafted by Rodney DeFlumeri in May 2010 that address Plaintiff's employment status, including all documents that discuss: hiring, firing, retention, termination, appointment, and/or re-appointment. This document production, and/or notice that all such documents have been produced, shall be completed and served on Plaintiff on or before **August 30, 2013**.

**IT IS FURTHER ORDERED** that "Plaintiff's Request For Motion To Compel The Defendant To Produce Documents" (Document No. 63) is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Plaintiff shall file a response to "Federal Defendant's Motion To Dismiss Or, In The Alternative, For Summary Judgment" (Document No. 62) on or before **September 6, 2013**. Failure to file a timely and persuasive response may lead to Defendant being granted the relief sought, including dismissal of this lawsuit.

**SO ORDERED**.

Signed: August 22, 2013

David C. Keesler
United States Magistrate Judge